218 N.J. Super. 389 (1987)
527 A.2d 943
HAROLD BRONSON, PLAINTIFF-APPELLANT,
v.
SEYMOUR BRONSON, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF SYLVIA BRONSTEIN, DECEASED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1987.
Decided July 7, 1987.
*390 Before Judges MICHELS, O'BRIEN and SKILLMAN.
Clifford W. Starrett argued the cause for appellant (Schenck, Price, Smith & King, attorneys; Clifford Starrett, of counsel and on the brief).
Stephen J. Oppenheim argued the cause for respondent (M.J. & S.J. Oppenheim, attorneys; Stephen Oppenheim, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*391 Plaintiff and defendant were both beneficiaries under the will of their late mother, Sylvia Bronstein. Shortly before her death, Mrs. Bronstein transferred all her remaining assets into joint accounts with defendant. This lawsuit was brought to set aside those transfers on the grounds of undue influence. The trial court dismissed the action at the close of plaintiff's case. We reverse.
At the time of the events in question Mrs. Bronstein was in her late eighties. She had been living by herself in Florida since her husband's death in 1979. She was in good health and in full command of her faculties. However, she relied upon defendant in connection with her financial affairs. She gave her stock certificates, which were her main source of income, to defendant, who kept them in his safe deposit box. Defendant also made recommendations to his mother concerning the sale of her assets and reinvestment of the proceeds, which she routinely followed.
In late May of 1985 Mrs. Bronstein became seriously ill and on the advice of her physician moved to New Jersey to live with defendant. At first her condition was diagnosed as anemia and it was anticipated that she would stay with defendant only temporarily. However, after her arrival in New Jersey she was diagnosed as having lung cancer. Thereafter, her health deteriorated rapidly and she died on November 7, 1985.
Mrs. Bronstein had slightly more than $200,000 in assets which she held jointly with defendant at the time of her death. She placed $15,000 in certificates of deposit in a joint account with defendant in December 1980. Defendant testified that the purpose of this transfer was "[b]ecause partially it was a convenience for me to help my mother manage that money and partially because she wanted me to have it, if something happened to her." This money was subsequently reinvested in a Ginnie Mae account. Mrs. Bronstein also had a joint checking account with defendant and held in joint name an investment in *392 American Insured Mortgage Trust units. The total of Mrs. Bronstein's assets held in joint name prior to the time she moved into defendant's house was approximately $25,000. However, another approximately $190,000 was transferred into joint names in June and September 1985, while Mrs. Bronstein was living with defendant in a terminally ill condition.[1]
The principles which govern a case such as this were described as follows in In re Dodge, 50 N.J. 192 (1967):
[T]he common law has always imposed a heavy burden of proof in most instances of claimed inter vivos gifts, even where the donor is not shown to have been mentally incompetent at the time of the transaction. The principle has been expressed frequently that "in all transactions between persons occupying relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, is presumed, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood." In re Fulper's Estate, 99 N.J. Eq. 293, 302 (Prerog.Ct. 1926).
In the application of this rule it is not necessary that the donee occupy such a dominant position toward the donor as to create an inference that the donor was unable to assert his will in opposition to that of the donee. As Chief Justice Gummere observed in Slack v. Rees, 66 N.J. Eq. 447, 449 (E. & A. 1904), the doctrine has a much broader sweep. "Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee, as it is to afford him protection against the consequences of voluntary action on his part induced by the existence of the relationship between them, the effect of which upon his own interests he may only partially understand or appreciate." In our judgment, whenever it appears that the relations between the parties to an inter vivos gift are of such character that in reasonable probability they do not deal with each other on terms of equality because one has given friendship and justifiably reposes confidence in the other, that on the donee's side superior knowledge exists as to the nature of the transaction proposed by him, as well as the detriment to be suffered by the donor if he engages in it *393 and the donee fails to see to it that the donor thoroughly understands its nature and consequences, equity should regard it as voidable at the instance of the donor or his representatives. In such a situation the donee must show by explicit and convincing evidence that the donor intended to make a present gift and unmistakably intended to relinquish permanently the ownership of the subject of the give.... And where death or incompetency of the donor has intervened between the alleged gift and the making of the claim, which generally facilitates the making of false and non-meritorious claims, the common law has long recognized a particular need for compliance with the burden of proof; ... [50 N.J. at 227-228].
This court has recently reaffirmed these principles in Pascale v. Pascale, 216 N.J. Super. 133 (App.Div. 1987), certif. granted, 108 N.J. 183 (1987):
... We are convinced that in the present day it is equitable and just to require only that it be proven that the donor has reposed such trust in the handling of financial and legal affairs in the donee that a confidential relationship exists. Once this has been established the donee must carry the burden of affirmatively demonstrating that there was no deception or undue influence and that all was open, fair and completely understood. [216 N.J. Super. at 140].
We are persuaded that the trial court misapplied the principles of Dodge and Pascale in dismissing this action at the close of plaintiff's case. At that stage of the case, the trial court was obligated to accept as true all evidence supporting the position of plaintiff and to accord him the benefit of all inferences which could reasonably and legitimately be deduced therefrom. Dolson v. Anastasia, 55 N.J. 2, 5 (1969). Viewed in this light, the evidence before the trial court could sustain a conclusion that a confidential relationship existed between Mrs. Bronstein and defendant. Even before Mrs. Bronstein moved to New Jersey, defendant assisted her in financial matters. This assistance took the form of recommending the sale of assets and the reinvestment of proceeds, which transactions were executed by defendant through a broker in New Jersey. When Mrs. Bronstein moved into defendant's home, she became more dependent upon him. She was suffering from a serious illness which required blood transfusions and later radiation treatments. She had to rely upon defendant and his family for transportation and for daily care. Indeed, her inability to live independently and to care for herself was the reason she moved *394 from Florida to New Jersey. Therefore, "in reasonable probability" defendant was not dealing with his aged and ill mother "on terms of equality" during this time period. Hence, he had the burden to show that "no undue influence" was used, that "all was fair, open and voluntary" and that the legal effect of his mother's transfer of assets into joint name was "well understood." In re Dodge, supra, 50 N.J. at 227-228; see also Dessel v. Dessel, 122 N.J. Super. 119, 123 (App.Div. 1972), aff'd, 62 N.J. 141 (1973); Foster v. Medela, 9 N.J. Super. 195 (App. Div. 1950).
It is important to distinguish the claim of undue influence made in this case, involving inter vivos transfers, from cases involving a claim of undue influence in connection with the execution of a will. See, e.g., Haynes v. First Nat'l State Bk. of N.J., 87 N.J. 163 (1981). As observed in the leading New Jersey commentary in the field: "A presumption of undue influence arises in connection with transactions inter vivos where a confidential relationship exists between the donee and donor or grantee and grantor without additional circumstances.... This presumption is more easily raised than that affecting wills, as one is not likely to give away inter vivos what he still can enjoy." 5 N.J. Practice Clapp, Wills & Administration (3 ed. 1982), § 62 at 226, n. 15; see also Haydock v. Haydock, 34 N.J. Eq. 570, 575 (E. & A. 1881) ("the influence which is undue in cases of gifts inter vivos, is very different from that which is required to set aside a will").
The fact that this case involves a transfer into joint names is a further reason why the burden should be placed on defendant to show that his mother understood and desired that all her assets would pass directly to defendant rather than in accordance with the estate plan contained in her will. We take notice that assets sometimes are placed in joint name as "a poor man's will." See Sadofski v. Williams, 60 N.J. 385, 394-395 (1972). However, joint accounts are also sometimes used as "convenience accounts," so that another party may more easily handle the financial affairs of the true owner of the asset. See id. at *395 398-400. Here defendant admitted that this was one reason why the initial joint account was created. In addition, the substantial transfers made by Mrs. Bronstein while residing in defendant's home had the practical effect of subjecting all her assets to defendant's control. Our courts have long recognized that this circumstance raises a presumption of undue influence. Cf. Post v. Hagan, 71 N.J. Eq. 234 (E. & A. 1907); Slack v. Rees, 66 N.J. Eq. 447 (E. & A. 1904); see also Pascale v. Pascale, supra, 216 N.J. Super. at 140-141. In our view, defendant should have the burden under all these circumstances of showing both that his mother intended to make a gift to defendant through the transfers into joint name and that she acted without undue influence.
Accordingly, the judgment of no cause of action is reversed and the matter is remanded for further proceedings in conformity with this opinion.
NOTES
[1] This $190,000 was invested originally in stock of AT & T and the telephone operating companies spun-off at the time of the AT & T divestiture. AT & T stock worth $50,000 was sold in March 1985 and the proceeds reinvested in shares of National Federal Securities. In a part of his deposition introduced into evidence at trial, defendant testified that the shares of National Federal Securities were originally placed in Mrs. Bronstein's name. A letter prepared by his attorney and also introduced into evidence at trial confirms this and indicates that these shares were not put in joint names until June 11, 1985.