NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4622-11T2

APPROVED FOR PUBLICATION

November 15, 2013

APPELLATE DIVISION

IN THE MATTER OF THE
ESTATE OF AURELIA DEFRANK,
DECEASED.

_____

Submitted October 15, 2013 — Decided  November 15, 2013

Before Judges Parrillo, Harris and Guadagno.

On appeal from the Superior Court of New Jersey, Chancery Division, Probate Part, Mercer County, Docket No. 09-01870.

Hinkle, Fingles & Prior, P.C., attorneys for appellant Lorraine Rubaltelli (Eileen W. Siegeltuch, of counsel and on the briefs).

Wells & Singer, LLC, attorneys for respondent Diane DiDonato (Jonas Singer, of counsel and on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

Plaintiff Lorraine Rubaltelli appeals from the April 12, 2012 grant of summary judgment in favor of defendant Diane DiDonato, the executor of the estate of their mother, Aurelia DeFrank, holding that certain joint accounts in the names of decedent and defendant are non-probate assets governed by the

Multiple-Party Deposit Account Act (MPDA), N.J.S.A. 17:16I-1 to -17, and that upon decedent's death, the accounts passed outside of probate by survivorship to defendant. That same order denied plaintiff's cross-motion for summary judgment claiming the existence of a confidential relationship between decedent and defendant, and that at the time she established the joint accounts, decedent did not intend to create survivorship rights in defendant. For the following reasons, we reverse and remand.

Because this matter comes to us essentially from the motion court's grant of summary judgment in favor of defendant (the prevailing moving party), we view the evidence in the light most favorable to plaintiff. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012).

The parties are sisters and decedent's only children. Aurelia DeFrank died on August 18, 2009, her husband having predeceased her in 1987. Decedent's last Will dated March 21, 2002, and admitted to probate on December 28, 2009, named defendant as executor of her estate. Like her previous wills, decedent distributed her estate between her daughters and grandchildren, making specific provisions for the two grandchildren and, with the exception of her personal property devised to defendant, dividing the rest of her assets equally between her daughters.

It is estimated that the parties will each inherit approximately $700,000 from their mother's estate. That amount does not include the monies in twelve multi-party bank accounts titled jointly in the names of Aurelia DeFrank and defendant, totaling $259,407, which are the subject of this litigation. The funds in these joint accounts, if included in decedent's estate, would constitute about sixteen percent of its total value.

These accounts were created by decedent between 1980 and 2001. Although jointly titled, decedent alone contributed funds to the accounts during her lifetime and all of the account statements were mailed only to her. Decedent paid the taxes on all income earned on the accounts and had the right at any time to withdraw the funds or change the designation.

The accounts were created generally as either checking, savings, money market or certificates of deposit. Of the thirteen bank accounts, it appears decedent primarily used a checking account at Roma Bank to pay bills and for other purposes. Funds from other accounts were at times transferred into the Roma Bank checking account. Sometime after 2000, when decedent's vision began to deteriorate, defendant would write out checks from the Roma account for decedent to sign. According to plaintiff, pursuant to a Power of Attorney (POA)

decedent executed in 1991 and again in 2002 naming defendant as her attorney-in-fact, defendant would from time to time from June 2005 up to decedent's death, either assist her mother with banking transactions, or directly withdraw, transfer, deposit or gift funds from the joint accounts.

At the time of decedent's death, plaintiff was living in a separate apartment in her mother's two-family residence, having returned with her son to New Jersey in 1993 from Italy, where she had earned a medical degree and had been living with her husband until their divorce. Plaintiff, however, did not pay rent to her mother. Defendant, on the other hand, settled in the same area as decedent upon her graduation from an out-of-state college, married and had a daughter.

After decedent's Will was probated on December 28, 2009, a dispute arose between the sisters prompting plaintiff to file a complaint in the Chancery Division, Probate Part, to compel an accounting of their mother's estate. As executor of the estate, defendant provided an informal accounting. During the ensuing discovery, plaintiff learned, supposedly for the first time, of the joint bank accounts upon receipt of the estate tax returns, although later in depositions, she states that decedent had told her about the accounts. In any event, following discovery, the parties filed cross-motions for summary judgment.

In her summary judgment motion, defendant contended that the joint accounts in the names of decedent and defendant are non-probate assets subject to the MPDA, and that upon decedent's death, the accounts became defendant's sole property and not part of decedent's estate. As proof of decedent's intent, defendant pointed to the fact that plaintiff had lived rent-free in decedent's home for a substantial amount of time and upon their father's death, had alone received joint bank accounts that passed outside of his Will.[1]

In her cross-motion for summary judgment, plaintiff disputed decedent's intent and maintained that she created the joint bank accounts solely for convenience purposes, namely to have someone else on the accounts in the event decedent could not access them due to medical or other issues, and in fact, had used these accounts during her lifetime to pay routine expenses as well as make gifts equally to both parties for tax purposes. In further support of her position, plaintiff pointed to decedent's history of equal treatment of both daughters during her lifetime. Furthermore, plaintiff maintained that defendant shared a confidential relationship with decedent and that,

---

[1] Plaintiff denies receipt of funds in an amount comparable to that of the accounts titled in the names of decedent and defendant, but admits receiving at least one Vanguard joint money market account established by her father.

because defendant has not rebutted the presumption of undue influence, the MPDA does not control and the accounts belong to the estate.

Following argument, the probate judge denied plaintiff's motion for summary judgment and granted defendant's. The judge found that decedent intended to create survivorship rights in defendant to the disputed bank accounts, which are governed by the MPDA and therefore pass outside of probate to defendant. Additionally, the judge determined that no confidential relationship existed between decedent and defendant at the time the accounts were created.

This appeal follows, in which plaintiff argues that the court erred in granting defendant's motion for summary judgment and in denying hers because she proved by clear and convincing evidence that decedent did not intend to create a right of survivorship in the joint bank accounts in issue. We conclude that neither plaintiff nor defendant was entitled to summary judgment on account of disputed facts concerning decedent's state of mind and the nature of her relationship with the parties.

On appeal, we review the matter de novo and apply the same standard as the trial court in determining whether summary judgment is appropriate. Khadelwal v. Zurich Ins. Co., 427 N.J.

Super. 577, 585 (App. Div.), certif. denied, 212 N.J. 430 (2012); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div.), certif. denied, 154 N.J. 608 (1998). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The "essence of the inquiry" is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill, supra, 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)). There is a genuine issue of material fact only if the evidence presented "when viewed in the light most favorable to the non-moving party, [is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, supra, 142 N.J. at 540. The Brill Court explained the process:

> Of course, there is in this process a kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials. This process,

> however, is not the same kind of weighing
> that a factfinder (judge or jury) engages in
> when assessing the preponderance or
> credibility of evidence.  On a motion for
> summary judgment the court must grant all
> the favorable inferences to the non-movant.
> But the ultimate factfinder may pick and
> choose inferences from the evidence to the
> extent that "a miscarriage of justice under
> the law" is not created.
>
> [Id. at 536.]

Apropos here, "[c]ross motions for summary judgment do not preclude the existence of issues of fact." O'Keeffe v. Snyder, 83 N.J. 478, 487 (1980).  Thus, generally, cross motions do not "'obviate a plenary trial of disputed issues of fact, where such exists; nor do cross-motions constitute a waiver by the litigants to such a trial.'"  Ibid.  (quoting Rotwein v. Gen. Accident Grp., 103 N.J. Super. 406, 425 (Law Div. 1968)).

It is ordinarily improper to grant summary judgment when a party's state of mind, intent, motive or credibility is in issue.  Mayo, Lynch & Assocs., Inc. v. Pollack, 351 N.J. Super. 486, 500 (App. Div. 2002); G & W, Inc. v. Bor. of E. Rutherford, 280 N.J. Super. 507, 514 (App. Div. 1995); Valley Nat'l Bank v. P.A.Y. Check Cashing, 378 N.J. Super. 406, 421 (Law Div. 2004), aff'd o.b., 378 N.J. Super. 234 (App. Div. 2005); Pressler, Current N.J. Court Rules, comment on 2.3.4 on R. 4:46-2 (2014). In Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 290-92 (1988), the Court reversed a summary judgment order when the issue was

whether plaintiff had waived his claims; the Court reasoned that whether plaintiff intended a waiver was a genuine fact issue. In G & W, supra, 280 N.J. Super. at 514, an anti-trust case, we said that summary judgment was not appropriate because motive and intent were in issue. In Duerlein v. N.J. Auto. Full Ins. Underwriting Ass'n, 261 N.J. Super. 634, 642 (App. Div. 1993), an insurance case, this court concluded that the trial judge erred in "summarily conclud[ing] that [the defendant-insurance company] was guilty of bad faith."

Indeed, "[t]he cases are legion that caution against the use of summary judgment to decide a case that turns on the intent and credibility of the parties." McBarron v. Kipling Woods, L.L.C., 365 N.J. Super. 114, 117 (App. Div. 2004). In Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 76 (1954), the Court set a high standard for summary judgment where intent is involved, noting

> Where, as here, the opposing party charges the moving party with willful fraud and must probe the conscience of the moving party (or its officers, when, as here, a corporation) to prove his case, or in any case where the subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain.
>
> [Ibid.].

Thus, it is clear that questions of a party's state of mind, knowledge, intent or motive should not generally be decided on a summary judgment motion. Garden St. Bldgs. v. First Fid. Bank, 305 N.J. Super. 510, 527 (App. Div. 1997), certif. denied, 153 N.J. 50 (1998).

And lastly, where there is no dispute of material fact, we must then look to the motion court's ruling on the law. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). Of course, the "'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[.]'" McDade v. Siazon, 208 N.J. 463, 473 (2011) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010)); Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Governed by these standards, we turn first to the applicable law. Under the MPDA, during the lifetime of all parties, a joint account belongs to the parties "in proportion to the net contributions by each to the sums on deposit," unless the terms of the contract indicate a contrary intent or there is clear and convincing evidence of a different intent at the time the account was created. N.J.S.A. 17:16I-4(a). During her lifetime Aurelia DeFrank owned all of the money in the accounts

at issue because she deposited all of the money contributed to them.

However, when a party to a joint account dies, there is a rebuttable presumption that a right of survivorship was created. N.J.S.A. 17:16I-5(a) provides:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.
>
> [(Emphasis added).]

As noted, the statutory presumption is rebuttable, and may be overcome with evidence showing that undue influence was used in the creation of the joint accounts, or that the accounts were solely for the convenience of the depositor. See Sadofski v. Williams, 60 N.J. 385 (1972) (holding that the accounts had been created for convenience purposes, to enable decedent's daughter to help manage her financial affairs, and that there was no intent to create survivorship rights); In re Estate of Penna, 322 N.J. Super. 417, 428-29 (App. Div. 1999) (finding no intent to create survivorship rights when one of the children handled financial transactions for the decedent, who had been living in another state, and decedent had shown "evenhanded" treatment of her children both during her life and in her Will); Bronson v.

Bronson, 218 N.J. Super. 389, 394 (App. Div. 1987) ("[J]oint accounts are also sometimes used as 'convenience accounts,' so that another party may more easily handle the financial affairs of the true owner of the [account].").

A challenge based on undue influence may be made by showing that the survivor had a confidential relationship with the party who established the account. Under this approach,

> [I]f the challenger can prove by a preponderance of the evidence that the survivor had a confidential relationship with the donor who established the account, there is a presumption of undue influence which the surviving donee must rebut by clear and convincing evidence.
>
> [Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 401 (App. Div. 2007).]

Although perhaps difficult to define, the concept "encompasses all relationships 'whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists.'" Pascale v. Pascale, 113 N.J. 20, 34 (1988) (internal citation omitted). And while family ties alone may not qualify, parent-child relationships have been found to be among the most typical of confidential relationships. Ostlund, supra, 391 N.J. Super. at 401. "Where parties enjoy a relationship in which confidence is naturally inspired or reasonably exists, the person who has gained an advantage due to that confidence has the burden of proving that no undue

12

influence was used to gain that advantage[,]" In re Estate of Penna, supra, 322 N.J. Super. at 423, and that the depositor-decedent understood the consequences of the transaction. Bronson, supra, 218 N.J. Super. at 392.

Thus, where a confidential relationship exists between a defendant and her mother, a defendant has the burden of showing that she did not use undue influence and that her mother understood the legal effect of the transfer of assets into joint accounts, namely that her assets would pass to defendant rather than in accordance with the terms of her Will. Undue influence has been described as "that sort of influence that prevents the person over whom it is exerted 'from following the dictates of his own mind and will and accepting instead the domination and influence of another.'" Pascale, supra, 113 N.J. at 30 (internal citations omitted). "Even if no undue influence is found, a trial judge should still be free to look at all the direct and circumstantial evidence available to determine whether the depositor intended to create survivorship rights." Penna, supra, 322 N.J. Super. at 427.

Governed by these principles, we are convinced that the motion judge's dismissal of plaintiff's case must be reversed. Despite the dearth of proof as to the actual creation of the accounts, there is circumstantial evidence from which a

factfinder could reasonably find that the joint accounts were established for decedent's convenience during her lifetime and that she shared a confidential relationship with defendant, sufficient at the very least to raise genuine issues of fact as to both.

As to the former, plaintiff asserts her mother included defendant on the accounts out of an abundance of caution to ensure access to funds during her lifetime.  While plaintiff's self-serving representation may be insufficient in itself to raise a factual dispute as to decedent's true intention, the actual use of these accounts by decedent and defendant tends to support plaintiff's claim.  There is evidence — much of it in fact undisputed — that decedent used the funds in these joint accounts to pay her own expenses and to make gifts to both her daughters and grandchildren, a pattern and practice continued by defendant when she began handling her mother's financial affairs.  There is further evidence that these inter vivos gifts to the parties and their children were in equal amounts as were, for the most part, decedent's testamentary dispositions[2] — circumstantial proof from which decedent's intention to provide for her daughters equally upon her death may be inferred.  Of

---

[2] The residuary clause of decedent's Will provides: "I give the residue of my estate, whether real, personal or mixed, in equal shares to my children."

course, such an established pattern of equal treatment to the two children runs counter to the assumption that decedent intended to give one daughter well over $250,000 more than the other, representing sixteen percent of her overall estate.

There is also evidence that defendant and her mother shared a confidential relationship. By all accounts, defendant had more in common with decedent than did plaintiff. Defendant herself describes her relationship with her mother as "very close" and states it "became even closer" after her father's death. Defendant transported her mother to doctor's visits, the supermarket and social outings on weekends, and visited with her on a daily basis.

More significantly, there is evidence suggesting decedent trusted defendant with her financial affairs, having named defendant as her attorney-in-fact in two POAs executed in 1991 and 2002, and as executor of her Will. In fact, defendant acknowledged often driving her mother to the bank and assisting her in financial transactions, and further explained that she regularly transferred funds from decedent's bank accounts and wrote out checks for her mother to sign. In this regard, there is documentary proof of at least twelve incidents from June 2005 through decedent's date of death wherein defendant either assisted decedent or herself withdrew, deposited, transferred or

15

gifted funds from the disputed joint bank accounts on behalf of her mother. Such a delegation of responsibility for one's financial affairs via the creation of joint accounts is certainly evidential of a confidential relationship between those in whose names the accounts are titled. See, e.g., Penna, supra, 322 N.J. Super. at 424; Bronson, supra, 218 N.J. Super. at 395.

We are persuaded, therefore, that the motion judge should not have dismissed plaintiff's action on summary judgment because, viewing the evidence and inferences therefrom most favorably to her, a rational factfinder could find a confidential relationship existed between defendant and her mother, or that the accounts were created for decedent's convenience only, or both. In reaching a contrary result, the motion judge looked only at the facts and circumstances extant at the time the joint accounts were established and therefore ignored what transpired after 2000, holding that timeframe to be the only relevant one.[3]

We disagree with the motion judge's reasoning. We have found no law in this State that restricts evidence of intent to

_____

[3] In her opinion, the motion judge held that the evidence of defendant's role in managing decedent's financial affairs after the joint accounts were created was "not probative of whether a confidential relationship existed at the time when the joint accounts were created."

the point at which the joint bank account is created. In fact, in Penna, supra, we explicitly rejected such a rigid approach to establishing intent under the MPDA, 322 N.J. Super. at 426-27, noting that "it makes it extremely difficult for the estate to rebut the presumption of survivorship." Ibid. Instead, we adopted a more flexible approach, first looking to whether the accounts were "validly created," i.e., whether undue influence was exerted over the decedent, id. at 427, and even if not, looking at "all direct and circumstantial evidence available . . .[]" to determine whether the decedent intended to create a survivorship right. Ibid.

Thus, in Penna, we looked at the circumstances extant at the time the accounts were created, as well as later gifts made by the decedent. Id. at 428-29. In doing so, we rejected the contrary view espoused in In re Estate of Cullmann, 426 N.W.2d 811, 815 (Mich. Ct. App. 1988), "that evidence of depositor's intent or state of mind after she had created the joint account was irrelevant to her state of mind or intent at the time the account was opened . . . ." Id. at 426.

Similarly, in Ostlund, supra, 391 N.J. Super. at 399-400, we considered evidence of estate distribution plans made by the decedent after he had opened up the joint account. Although we ultimately credited the defendant's testimony that the account

17

was intended to go to him after decedent's death, we did not exclude evidence of decedent's intentions for the account, even when that evidence arose four years after the account was created. Id. at 398-400.

Indeed, even the motion judge acknowledged that evidence of such post-formation events could "support an inference that if a confidential relationship existed during the final years of [d]ecedent's life, it is likely that it existed earlier" when the accounts were created.

Viewing the evidence as well as all of the legitimate inferences that can be deduced from those proofs most favorably to plaintiff, as we must on a grant of summary judgment to defendant, we are satisfied that the motion judge was mistaken in holding there was no evidence tending to rebut the statutory presumption of survivorship.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                        A-4622-11T2