**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2699-21

NATACHA SMITH,

    Plaintiff-Appellant,

v.

JOCELYNE VIECELI,
JOHN MALAVASI, and
CHELSIE MALAVASI,

    Defendants-Respondents.

_____

Argued February 13, 2024 – Decided July 16, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Hunterdon County, Docket No. C-014025-19.

Lee B. Roth argued the cause for appellant.

David A. Avedissian argued the cause for respondent Jocelyne Vieceli (The Law Offices of David A. Avedissian, Esquire, LLC, attorneys; David A. Avedissian, on the brief).

Marshall T. Kizner argued the cause for respondents John Malavasi and Chelsie Malavasi (Stark & Stark PC, attorneys; Marshall T. Kizner, of counsel and on the brief).

PER CURIAM

This appeal, involving defendant Jocelyne Vieceli's purported breach of an alleged oral contract to purchase a home in Ringoes where plaintiff Natacha Smith lived as a long-term tenant, returns to us after our remand. Before us, plaintiff challenges the court's order granting summary judgment and dismissing the contract claims against Vieceli, as well as the intentional interference of contract claim against the successful purchasers of the Ringoes property, defendants John and Chelsie Malavasi (together, the Malavasis). Plaintiff also appeals from a separate order awarding the Malavasis $8,549.97 in litigation sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. We affirm.

I.

The facts underlying the parties' dispute are detailed in our unpublished opinion, see Smith v. Vieceli, No. A-2615-19 (App. Div. Mar. 9, 2021), as well as in Judge Margaret Goodzeit's April 20, 2022 forty-seven page written decision supporting her summary judgment rulings and June 3, 2022 thirteen page written opinion supporting the order awarding the Malavasis litigation sanctions. We direct the reader to our prior opinion and Judge Goodzeit's

2

written decisions for a more detailed discussion of the facts, as we address only those portions of the record necessary to place our decision in context.

In our previous unpublished opinion, we reversed the court's order granting Vieceli summary judgment on plaintiff's oral contract claim and its order denying reconsideration. We concluded the court's order was improvidently entered shortly after the court denied Vieceli's motion to dismiss under Rule 4:6-2(e), and before Vieceli responded to plaintiff's outstanding discovery. We further determined that on the undeveloped record before us, genuine and material factual questions existed regarding the alleged oral agreement such that dismissal of plaintiff's complaint was therefore unwarranted at such an early stage of the proceedings. See Smith, slip op. at 1-2.

On remand, plaintiff amended her complaint to add the Malavasis as defendants and asserted a tortious interference of contract claim against them. After the parties completed discovery, including the depositions of plaintiff and Vieceli, all defendants moved for summary judgment. Plaintiff requested the court enter partial summary judgment in her favor and conclude she and Vieceli entered a binding contract to purchase the Ringoes property. In addition, defendants moved for reimbursement of their fees and costs under Rule 1:4-8

and N.J.SA. 2A:15-59.1 based on what they contended was plaintiff's frivolous litigation conduct.

Judge Goodzeit granted defendants' summary judgment applications, denied plaintiff's, and granted the Malavasis' fee request, in part, while denying Vieceli's application. Judge Goodzeit determined plaintiff failed to establish she had an agreement with Vieceli and her husband to purchase the property prior to his death, and also noted plaintiff did not seek to enforce any such earlier agreement by way of specific performance. In addition, the judge also concluded the motion record failed to establish the existence of an enforceable oral agreement during Vieceli's husband's lifetime based on partial performance. In sum, the judge found the undisputed record after discovery failed to create a genuine and material factual question that the parties agreed upon "essential terms, including price" and therefore the alleged agreement was nothing more than an "unenforceable indefinite promise."

Next, Judge Goodzeit concluded summary judgment was appropriate with respect to plaintiff's claim she entered a binding oral agreement with Vieceli to purchase the property for $295,000. After detailing the undisputed facts in the motion record, the judge explained after plaintiff rejected Vieceli's initial offer

to purchase the property for $400,000, plaintiff hired a realtor,[1] as did Vieceli, and all communications proceeded between those respective representatives. The judge acknowledged the undisputed fact plaintiff accepted Vieceli's reduced offer of $295,000, but plaintiff's subsequent conduct, according to the judge, supported the conclusion she "did not act as if she believed she had a binding oral agreement."

That conduct, all of which occurred after plaintiff maintained she had a binding oral agreement, included: 1) her awareness the property would be shown to prospective buyers who intended to bid on the property; 2) assenting to her agent forwarding a signed agreement with an attorney review provision with a contemporaneous text to her agent that plaintiff believed Vieceli would "sit" on the contract until the completion of all showings; 3) her comment the night the written agreement was forwarded that she "did not know what to think" regarding Vieceli's failure to sign the agreement, and 4) her inquiry to her realtor as to what her lawyer would need to do in order to "officially get [the written agreement] in attorney review today?"

---

[1] In her deposition, plaintiff denied she hired a realtor, instead characterizing Deborah Stefanelli as a "friend" who "gave [her] advice and then . . . jumped in." The written agreement, however, lists Stefanelli as plaintiff's broker and agent.

A-2699-21

Judge Goodzeit also considered the undisputed record regarding communications between the brokers which "demonstrated . . . they did not believe a binding agreement had been reached just because a price had been agreed upon."  Most notably, the judge highlighted the following exchanges after the alleged binding oral agreement was entered:  1) plaintiff's realtor stated the parties "really needed" to finalize the written agreement, 2) Vieceli's broker noted errors in the agreement, and the need for her client to execute the document which she had not yet done, 3) plaintiff's additional communications through her realtor to Vieceli's realtor, without reservation as to the existence of any alleged binding oral agreement, increasing her offer from $295,000 to $300,000 and a supplemental written escalation clause up to $315,000, and 4) the continued showings of the property, with plaintiff's full knowledge and without objection.  The judge concluded plaintiff's initial acceptance of Vieceli's $295,000 offer, in light of the aforementioned undisputed facts and circumstances, did not "overcome the high burden" plaintiff was required to meet to establish the parties' intention to be bound by an oral agreement.

Further, Judge Goodzeit rejected plaintiff's contention she was not bound by the attorney review period contained in the proposed written agreement.  On this point, the judge noted because plaintiff's realtor, who acted as plaintiff's

6

agent, prepared the document, New Jersey law required it to contain the mandatory three-day review period. The judge also observed that had Vieceli signed the agreement, as plaintiff and her realtor were urging, she would have been permitted, as would plaintiff, to cancel the agreement for any purpose. According to the judge, the fact that plaintiff had prepared and executed a contract with an attorney review period evidenced she clearly intended "to be bound by the three-day attorney review period . . . [and] . . . must also have contemplated that the deal would not be consummated until Vieceli signed the contract as well."

Finally, Judge Goodzeit reviewed the parties' undisputed conduct to support her finding they did not enter a binding oral agreement. In this regard, the judge re-emphasized that plaintiff had acknowledged that Vieceli would "sit on the agreement . . . [and] . . . showings would continue." Further, the judge noted again plaintiff continued to increase her offer to purchase the property and never requested her counsel take any timely "action to enforce her rights which she now attempt[ed] to rely upon." Instead, Judge Goodzeit observed it was not until "a month after" Vieceli entered into a written contract with another bidder that plaintiff retained counsel, who for the first time alleged the existence of a prior binding oral contract. Considering these facts against the standard set forth

A-2699-21

in <u>Brill v. Guardian Life Insurance Co. of America</u>, 142 N.J. 520, 540 (1995), the judge concluded plaintiff failed to establish, clearly and convincingly, the existence of a binding agreement, "oral or otherwise," between plaintiff and Vieceli.

With respect to plaintiff's tortious interference claim against the Malavasis, the judge similarly concluded plaintiff failed to raise a genuine and material factual question warranting resolution of the claim by a factfinder. As Judge Goodzeit explained, among other requirements, to assert successfully such a cause of action under New Jersey law, a plaintiff must establish that a defendant's purported interference was both intentional and improper. Based on the motion record, the judge determined plaintiff failed to "provide any evidence to establish the Malavasis[] knew that plaintiff intended to purchase the property or that their act of bidding on the property was improper."

The judge further explained that even if the Malavasis knew plaintiff remained interested in purchasing the property and was submitting a bid, that knowledge did not support a tortious interference claim as it was undisputed "the property was listed for sale and Vieceli was accepting bids," and the Malavasis were simply the highest bidders. Further, the judge noted the fact the Malavasis' contract permitted them to terminate the contract if the seller was

involved in litigation did not create a genuine and material factual question because the provision was permissive, and at the time they entered the purchase agreement, no lis pendens was filed nor was the litigation disclosed on the affidavit of title. In sum, the judge concluded nothing in the motion record established the Malavasis' purchase was in any way "malicious or wrongful."

Judge Goodzeit wrote a separate written opinion with respect to the parties' sanctions applications. Relying on Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 580 (App. Div. 2016), the judge first rejected Vieceli's motion after finding plaintiff did not act in bad faith when prosecuting her oral contract claims. On this point, the judge noted the mere "fact that plaintiff did not prevail on her claims" did not serve as a basis to award sanctions under N.J.S.A. 2A:15-59, or Rule 1:4-8.

Judge Goodzeit reached a different conclusion, however, with respect to the Malavasis' application. As the judge explained, despite permitting plaintiff to amend the complaint to assert a claim of tortious interference and seek specific performance, after plaintiff's deposition, "it became apparent that there was no rational argument with a 'reasonable basis in law or equity' to continue a claim of tortious interference against the Malavasis or seek to disgorge them from their home. See N.J.S.A. 2A:15-59.l(b)(2)."

The judge also determined "discovery produced a complete dearth of evidence suggesting that the Malavasis had any knowledge of Smith's alleged agreement with Vieceli, or of the litigation involving the property, when the Malavasis made their contract with Vieceli" and plaintiff failed to "point to any action taken by the Malavasis" to interfere with the purported oral agreement besides their purchase of the property. As noted, the judge awarded the Malavasis $8,549.97, representing the reduced fees and costs incurred for services rendered by their counsel following plaintiff's deposition. This appeal followed.

II.

Before us, plaintiff first contends Judge Goodzeit improperly resolved genuine and material factual disputes with respect to the existence of a binding oral agreement contrary to Brill. As she explains, the record established plaintiff accepted Vieceli's offer to purchase the property for $295,000 and mere discussions about altering the agreement, without assent by both parties, regarding additional conditions or price adjustments should not result in the nullification of a binding oral agreement, a conclusion plaintiff further argues remains unaffected notwithstanding the involvement of licensed real estate agents.

10

Plaintiff also argues the judge committed reversible error, warranting a further remand for a trial on the merits, because she granted summary judgment when the parties' "state of mind, motive, or credibility" were at issue. Finally, plaintiff contends Judge Goodzeit erred when she concluded the amended claims against the Malavasis were frivolous and should have been withdrawn, rendering her subsequent $8,549.97 fee award improper.

We have considered all of plaintiff's arguments against the record, as applied to the applicable standards of review and relevant substantive legal principles and affirm substantially for the reasons expressed in Judge Goodzeit's comprehensive written decisions. We provide the following comments to amplify our decision.

"We review a ruling on summary judgment de novo, applying the same legal standard as the trial court." Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 255 (App. Div. 2023). That standard requires courts to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). Although summary judgment is "ordinarily improper . . . when a party's state of mind, intent, motive or credibility is in issue," In re Est. of DeFrank, 433 N.J. Super. 258, 266 (App. Div. 2013), as our Supreme Court explained, "[e]ven when credibility may be an issue, '[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact,'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 450 (2007) (second alteration in original) (quoting Brill, 142 N.J. at 540).

Summary judgment is properly granted "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)); see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014); Memudu v. Gonzalez, 475 N.J. Super. 15, 19 (App. Div. 2023). In other words, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to

A-2699-21

permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

Against this standard of review, we consider the applicable legal principles governing oral agreements for the purchase of real property. "A contract arises from [an] offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Ibid. In certain circumstances, the Statute of Frauds permits enforcement of an oral agreement for the sale of real property if "a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence of the agreement and the identity of the transferor and the transferee are proved by clear and convincing evidence." N.J.S.A. 25:1-13(b).

"[T]he focus of inquiry in a situation involving an agreement for the sale of an interest in real estate . . . should be whether an agreement has been made between the parties by which they intend to be bound." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 126 (2004) (second alteration in original) (quoting

New Jersey Law Revision Comm'n, Report & Recommendations Relating to Writing Requirements for Real Est. Transactions, Brokerage Agreements & Suretyship Agreements 2, 10 (1991) ("Revision Commission Report")).

"[A] 'high standard of proof' must be met to establish that intent." Ibid. (quoting Revision Commission Report at 10). "Specifically, 'the existence of an [oral] agreement between the parties as well as its essential terms must be proved by clear and convincing evidence.'" Ibid. (alteration in original) (quoting Revision Commission Report at 10). Further, the parties must "manifest[ ] an intent to enter into an oral agreement," id. at 130 (emphasis added), not just the written agreement. In determining whether parties intended to enter into a binding oral agreement, we evaluate: 1) the circumstances surrounding a transaction; 2) the nature of the transaction; 3) the relationship between the parties; 4) the parties' contemporaneous statements; and 5) the parties' prior dealings. Id. at 126 (quoting Revision Commission Report at 10).

Against these principles and the record before us, we agree with the judge plaintiff failed to establish a material factual question as to whether clear and convincing evidence showed the parties' intent to be bound by an oral agreement to sell the property for $295,000. We are satisfied the "competent evidential materials presented, [even] when viewed in the light most favorable to

14

[plaintiff], are [not] sufficient to permit a rational factfinder to resolve the alleged disputed issue in [her] favor." Brill, 142 N.J. at 540.

The objective actions of both parties around the time of the purported oral agreement were inconsistent with an intent to be bound absent a written agreement. Vieceli, through her realtor, continued to show the property after the agreement, with plaintiff's cooperation. Plaintiff acknowledged to her realtor that she believed Vieceli would "sit on" the written agreement "until all the showings" were completed, and noted there were "a ton of showings," indicating her belief that Vieceli was considering other offers.

When her realtor informed her Vieceli had received other offers, plaintiff did not contact Vieceli, Vieceli's realtor, or her own realtor to enforce what she believed to be a binding oral agreement which would preclude Vieceli from accepting another offer to purchase the same property. Rather, she increased her offer and included an escalation clause. Although plaintiff testified at her deposition she was "forced to do it to try to salvage what was left," plaintiff's submission of an additional offer at a different price, without reservation or reference to the oral agreement, indicates there was no binding agreement at that stage.

Further, the written agreement itself does not support the proposition that it was intended to memorialize any existing oral agreement. It includes no such language or reference to any oral agreement. The written agreement also contained inspection provisions and other contingencies, contrary to the oral agreement, which according to Vieceli's realtor's certification, was "as is." Significantly, the written agreement also provided for a three-day attorney review period, during which either party could cancel the agreement. If the parties believed they had already entered a binding agreement, such a provision would be unnecessary.

Additionally, despite plaintiff's contentions to the contrary, the record reflects both parties contemplated a written agreement. Plaintiff testified at her deposition she "needed a signed contract" for her mortgage company, which was consistent with her realtor's certification that "the mortgage people would want a written agreement for their file." Plaintiff also testified she did not know if she could have obtained a mortgage or bought the property without a signed agreement.

Vieceli, for her part, testified at her deposition she would not "have sold the property without a binding written agreement." Although plaintiff challenges the propriety of Vieceli's testimony, the undisputed facts we have

16

described lead us to the conclusion "there exists a single, unavoidable resolution of the alleged disputed issue of fact," Liberty Surplus, 189 N.J. at 450 (quoting Brill, 142 N.J. at 540), regardless of Vieceli's credibility.

In sum, we are satisfied the facts in the record demonstrate the parties did not intend to be bound by their oral agreement absent a further written agreement, and "no reasonable jury could conclude otherwise." Brill, 142 N.J. at 545. Accordingly, the judge did not err in granting Vieceli summary judgment on plaintiff's contract claims.

## III.

We reach a similar conclusion with respect to Judge Goodzeit's decision to dismiss plaintiff's claims against the Malavasis. To establish a claim for tortious interference with contractual relations, a plaintiff must prove four elements: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003). This claim must be based, in part, on "facts claiming that the interference was done intentionally and with 'malice.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751 (1989)).

"For purposes of this tort, [t]he term malice is not used in the literal sense requiring ill will toward plaintiff," but instead is "defined to mean that the harm was inflicted intentionally and without justification or excuse." Ibid. (alteration in original) (quoting Printing Mart, 116 N.J. at 751). "An individual acts with malice when he or she intentionally commits a wrong without excuse or justification." Ibid. (quoting Cox v. Simon, 278 N.J. Super. 419, 433 (App. Div. 1995)).

A defendant's interference with a contract "is intentional 'if the actor desires to bring it about or if he [or she] knows that the interference is certain or substantially certain to occur as a result of his [or her] action.'" Ibid. (quoting Restatement (Second) of Torts § 766A, cmt. e (Am. Law Inst. 1977)). A party acting to "advance [its] own interest and financial position," however, fails to "establish the necessary malice or wrongful conduct." Ibid. (alteration in original) (quoting Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 451-52 (App. Div. 1976)).

As the judge correctly determined, plaintiff failed to establish a material factual question as to whether the Malavasis intentionally and maliciously interfered with the oral agreement. As we explained, the oral agreement between plaintiff and Vieceli was not intended to be binding absent a written

agreement, and thus was not a legally enforceable contract with which the Malavasis could interfere. Even setting that aside, plaintiff presented no evidence beyond bald assertions to support her contention the Malavasis improperly bid on the property.

Plaintiff did not depose either of the Malavasis, but when asked at her deposition how they interfered with the alleged oral contract, plaintiff answered "they bought a property that was in the middle of litigation." When pressed by the Malavasis' counsel, plaintiff could identify no other interference than purchasing the property. The Malavasis acting to "advance [their] own interest and financial position" by bidding on the property fails to "establish the necessary malice or wrongful conduct" for plaintiff's claim to succeed. Dello Russo, 358 N.J. Super. at 268 (quoting Sandler, 141 N.J. Super. at 451-52).

Chelsie Malavasi certified she and her husband "did not know that [p]laintiff was one of the bidders" at the time they, and "several other interested parties," bid on the property. While plaintiff claims she and Chelsie Malavasi were friends and Malavasi "knew [she] intended to buy the property," Malavasi disputes this, and plaintiff presents no competent evidence to show the Malavasis had any knowledge of the oral agreement at the time they bid on the property. Even if they did know, however, as the judge noted, that would not

19

make their bid improper, as the property was for sale and Vieceli was accepting bids. The Malavasis simply submitted a higher bid than plaintiff.

Additionally, the record reflects plaintiff had not yet filed her complaint against Vieceli at the time of bidding. The Malavasis' attorney review letter disapproving the contract for sale unless specified amendments were made was dated August 15, 2019, while plaintiff's complaint was filed September 22, 2019. Indeed, it is undisputed there was no lis pendens on the property at that time, and the Affidavit of Title signed by Vieceli represented "[n]o other persons have legal rights in this [p]roperty" and "[t]here are no pending lawsuits or judgments against us or other legal obligations which may be enforced against this [p]roperty." The provision in the contract permitting, but not requiring, the Malavasis to terminate the purchase in the event of litigation regarding the property did not mean the Malavasis knew litigation was forthcoming.

In sum, the motion record overwhelmingly demonstrates the parties did not intend to be bound by plaintiff's acceptance of Vieceli's $295,000 counteroffer and the Malavasis did not intentionally interfere with plaintiff's purported agreement. Summary judgment was appropriate here given how one-sided the evidence was.

IV.

We turn next to plaintiff's challenge to the court's order directing her and her counsel to pay the Malavasis $8,549.97 in partial litigation sanctions for her continued prosecution of the lawsuit against them after it became clear the intentional interference claim was meritless.[2] Essentially, plaintiff argues her claim was not frivolous as the previous opinion found material questions of fact existed, and reprises her argument the Malavasis were not "innocent purchasers" but rather "gambled on the outcome of the then-pending appeal." We disagree with each of these points.

We review a trial judge's decision to award counsel fees on a motion for frivolous litigation sanctions under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

---

[2] Before us, plaintiff challenges only the propriety of the award and not its quantum or enforceability as against both her and her counsel. We limit our discussion accordingly.

21                                                          A-2699-21

The Frivolous Litigation Act, N.J.S.A. 2A:15-59.1, governs sanctions for frivolous litigation against a party. Under that statute, a court is permitted to "award reasonable attorney's fees and litigation costs to a prevailing party in a civil action if the court finds 'at any time during the proceedings or upon judgment that a complaint . . . of the non-prevailing person was frivolous.'" Bove v. AkPharma Inc., 460 N.J. Super. 123, 147-48 (App. Div. 2019) (quoting N.J.S.A. 2A:15-59.1(a)(1)). A complaint is frivolous if the judge "find[s] on the basis of the pleadings, discovery, or the evidence presented" that either: (1) the complaint "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury;" or (2) "[t]he non[-]prevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(1) to (2).

Similarly, Rule 1:4-8 provides a pleading is frivolous if: (1) it is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" (2) the claims therein are not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; (3)

22

the factual allegations lack evidentiary support; or (4) the denials of factual allegations are not warranted. R. 1:4-8(a). "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" Bove, 460 N.J. Super. at 148 (quoting United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009)). In the order imposing sanctions, the court "shall describe the conduct determined to be a violation of this rule and explain the basis for the sanction imposed." R. 1:4-8(d).

Applying these principles, we discern no abuse of discretion in the judge's decision to award partial attorney's fees pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1. As the judge found, at Smith's deposition she presented no evidence of interference by the Malavasis beyond their purchase of the property, which, as detailed supra, we conclude did not constitute tortious interference. Similarly, further discovery revealed nothing to establish the Malavasis had knowledge of the alleged oral agreement or of the forthcoming litigation at the time they bid on the property. At that point, it became clear there was no "reasonable basis in law or equity" to continue the claim against the Malavasis.

Plaintiff's reliance upon our earlier opinion is misplaced. The Malavasis were not defendants at the time of that decision and we did not opine as to whether material factual questions existed as to plaintiff's claim against them. Additionally, one of the primary bases for our earlier opinion was the timing of summary judgment being granted prior to completion of discovery. Even with the benefit of further discovery, however, plaintiff presented no credible evidence to support her claim against the Malavasis.

Additionally, the record clearly demonstrates the judge considered all relevant factors in her decision. She reasonably and properly limited the fee award to the Malavasis to the period following plaintiff's deposition. Further, the judge considered and rejected Vieceli's fee application, indicating she appropriately reviewed the record and facts surrounding plaintiff's claims. As such, we affirm the judge's decision granting partial counsel fees as a frivolous litigation sanction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2699-21