**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1838-22

IN THE MATTER OF THE
ESTATE OF LYNDA
NATHANSON SUTTON,
deceased.

_____

Argued December 2, 2024 – Decided July 1, 2025

Before Judges Sabatino, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. P-127920-21.

Roy F. Sutton, appellant/cross-respondent, argued the cause pro se (Kimberly D. Sutton, on the briefs).

Michael D. Weinraub argued the cause for respondent/cross-appellant Sandra L. Williams (Michael D. Weinraub, PC, attorneys; Michael D. Weinraub, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

PER CURIAM

In these cross-appeals, self-represented petitioner Roy F. Sutton appeals from a final order dated February 7, 2023, and eight pretrial orders[1] of varying dates, requesting our review of four primary issues. He asks us to determine whether the trial court erred in finding: 1) the parties' 1992 antenuptial agreement ("Agreement"), and the waiver of the elective share contained therein, is valid; 2) decedent Lynda Nathanson Sutton's 2014 Last Will and Testament ("Will") is valid; 3) the Will was not subject to undue influence by respondent, Sandra L. Williams; and 4) petitioner was not entitled to equitable relief in the form of a constructive trust on decedent's home. He also argues the trial court's award of a life estate without the right of alienation was an abuse of discretion.[2] Respondent cross-appeals from the trial court's holding that petitioner is entitled to a life tenancy in decedent's home, despite the restriction

---

[1] Although petitioner includes those orders in his notice of appeal, he does not brief all of the issues raised in those orders. To the extent those issues have not been addressed in petitioner's brief, we deem them waived. Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal."); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025) ("It is, of course, clear that an issue not briefed is deemed waived.").

[2] After oral argument and while this opinion was pending, petitioner filed a motion on February 10, 2025, seeking sanctions against respondent's counsel for alleged misstatements made during oral argument on the appeal. Finding no legal basis to impose sanctions, we deny the motion. See M-003207-24.

on alienation. For the reasons expressed in Judge M. Susan Sheppard's detailed and well-reasoned thirty-six-page opinion, we affirm the trial court's orders finding the Agreement is valid and enforceable, including the waiver of the elective share. We also affirm the trial court's finding the Will is valid because it is self-proving, and petitioner failed to prove undue influence. However, we vacate the portion of the February 7, 2023 order granting a life estate to petitioner because it is contrary to decedent's intent as expressed in the Agreement and Will, and remand for entry of an order consistent with this opinion.

I.

We will not recite in detail the history of the parties' interactions during their marriage, decedent's interactions with respondent, or the testimonies of the thirteen witnesses who testified at trial. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Sheppard's opinion with respect to the validity of the Agreement, the validity of the Will, and the lack of undue influence by respondent, including Judge Sheppard's detailed factual and credibility findings. We add the following observations.

II.

A-1838-22

Our review of a judgment entered following a non-jury trial is limited. See D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013); Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023). "We may not overturn the trial court's fact[-]findings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci v. Cige, 240 N.J. 574, 595 (2020) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).

This court also "defer[s] to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). By contrast, "[the] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Further, "[t]he findings of the trial court on the issues of testamentary capacity and undue influence, though not controlling, are entitled to great weight

since the trial court had the opportunity of seeing and hearing the witnesses and forming an opinion as to the credibility of their testimony." Gellert v. Livingston, 5 N.J. 65, 78 (1950). The court's factual findings "should not be disturbed unless they are so manifestly unsupported or inconsistent with the competent, reasonably credible evidence so as to offend the interest of justice." In re Will of Liebl, 260 N.J. Super. 519, 524 (App. Div. 1992).

A. Validity of the 1992 Agreement and Decedent's 2014 Will

We note the trial court did not find petitioner's assertion, that he never signed the Agreement and was unaware of its existence, credible. Specifically, the court found "[p]etitioner's testimony was contradicted by multiple fact witnesses, exhibits, and even his own testimony between his deposition and at trial." The record reveals petitioner's testimony was contrary to the course of conduct between the parties both prior to and throughout their marriage, including the fact they lived separately for long periods of time, petitioner had sent a letter to decedent in 2005 disavowing the marriage, the credible testimony of various parties regarding their problematic marriage, decedent's reluctance to seek a divorce because of her faith, and decedent's consistent, oft-expressed desire to ensure petitioner did not inherit any part of her estate, particularly the property she purchased premaritally.

5

The Agreement and the Will corroborate each other and the parties' course of conduct throughout their marriage. Specifically, decedent alone purchased the property before the marriage, and paid off the mortgage, even after the refinance. Petitioner did not corroborate his testimony with any evidence demonstrating he financially contributed to the mortgage or expenses associated with the property. He was also never added to the deed during the parties' twenty-nine-year marriage, even at the refinance, when he easily could have been. Finally, there is sufficient credible evidence in the record to demonstrate decedent had multiple conversations the court found credible with Kathleen Whelan, Gail Snyder, Timothy P. Maguire, who was the attorney who prepared the Will, Michelle Maguire, and respondent, regarding her intention to leave her estate to her daughter and her grandchildren and, regardless, her unrelated intent to affirmatively disinherit petitioner due to his abandonment, lack of financial assistance, and perceived infidelity. Petitioner presented no evidence to rebut these findings of fact other than presenting witnesses who gave largely irrelevant testimony as to the couple's relationship in general terms, and some greeting cards between the parties introduced into evidence. He was unable to rebut the evidence demonstrating the parties maintained separate bank accounts and finances throughout the marriage, and failed to present any documentary

6

evidence to support his claims that he contributed to the costs and upkeep of the property.

We agree with the trial court that the Will disinheriting petitioner is self-proving as it was signed, notarized, and witnessed by two people. See In re Est. of Peters, 107 N.J. 263, 275-76 (1987) ("If . . . the will is to be 'self-proving,' that is, susceptible of being validated solely by the signed acknowledgement of the witnesses, the will must be signed by the witness in the presence of the testator . . . ."); N.J.S.A. 3B:3-4. A finding of the validity of the Will or the validity of the Agreement alone would independently serve to disinherit petitioner, subject to an elective share, and the trial court found both independently valid.

And, although petitioner proved a confidential relationship between decedent and respondent, he did not prove suspicious circumstances that would have shifted the burden to respondent to demonstrate a lack of undue influence. Although petitioner demonstrated respondent had a troubled past that worried her mother, all evidence, excluding petitioner's self-serving testimony, was consistent in decedent's intent to disinherit petitioner—regardless of whether decedent intended to leave the home to respondent, or in trust for her grandchildren. The Agreement stated the premarital property was free from any

claim, the Will did not name petitioner as the executor or even substitute executor, and decedent at no time added petitioner's name to the deed, even during the refinance of the mortgage in 2016.

Here, there is little question a confidential relationship existed between respondent and decedent. As decedent's daughter, respondent shared the "natural" confidential relationship described in In re Estate of DeFrank, 433 N.J. Super. 258, 268-69 (App. Div. 2013) (quoting Pascale v. Pascale, 113 N.J. 20, 34 (1988)), and the testimony provided by witnesses made clear decedent cared for respondent. Nevertheless, the court concluded no suspicious circumstances existed in specific detail. We agree with those conclusions.

And, although the court granted a directed verdict at the close of all testimony on the issue of undue influence, it considered undue influence once again in its final judgment, outside the constraints of a motion for a directed verdict. In the final judgment, the court again found the will was self-proving. See Est. of Peters, 107 N.J. at 275-76; N.J.S.A. 3B:3-4. The court also found although a natural confidential relationship existed between mother and daughter, no suspicious circumstances were present. The court did not believe it was "suspicious" a mother, who cared for her daughter, would choose to take care of her only child or her grandchildren, rather than a man who had always

been financially stable and lived independently. The court found consistency in decedent's intent throughout the parties' marriage, from the inception of the Agreement, through the drafting of the Will, and the lack of any revisions or codicils. It concluded there was no undue influence and therefore held the Will was valid and enforceable.

We conclude Judge Sheppard's findings of fact and conclusions of law finding the Agreement valid and enforceable, the Will valid and enforceable, and petitioner's failure to set forth sufficient suspicious circumstances to shift the burden of proof to respondent, unassailable, and affirm those portions of the final order.

B.     The Waiver of the Elective Share

Having found the Agreement valid and enforceable, the court also found the waiver of the elective share enforceable. The "burden of proof to set aside a premarital or pre-civil union agreement" is on the party challenging the agreement, and the party must prove by clear and convincing evidence that the agreement was either made involuntarily or was unconscionable. N.J.S.A. 37:2-38. It is important to note petitioner did not argue the Agreement was unconscionable, he argued only that it did not exist and he had no knowledge of the document.

The court properly found that on November 21, 1992, the day before their wedding, decedent and petitioner executed the Agreement. The Agreement provided that

> [a]ny property acquired during the marriage in the name of one party or under circumstances in which it is clear that such[] property was intended to be acquired separately by one party or where the source of the funds or assets by which such separate property was acquired is premarital assets, and shall remain the separate property of the party acquiring such assets.

The Agreement also provided that "[u]pon the death of either party, non-distributable property shall remain separate to be willed freely."

The Agreement appended six pages that appeared to have been copied from a source called "Matrimonial Document Forms" and contains Articles Five, Eight, Nine, and Ten. These appended pages include:

> Waiver of Property Rights. Except as herein to the contrary provided, each party may dispose of his or her separate property in any way, and each hereby waives and relinquishes any and all right he or she may now have or hereafter acquire, under the present or future laws of any jurisdiction to share in the property of the other party as a result of the martial relationship including, but not limited to, equitable distribution of property pursuant to N.J.S.A. 2A:34-23 or other similar statutory scheme for the division of marital property.
>
> [(Emphasis omitted).]

Decedent and petitioner signed the Agreement, and A. Ralph Perone signed as a witness, on November 21, 1992. These signatures and date also appear on the last of the appended pages. John Paul Osborne, a forensic document examiner, was called by the respondent as an expert witness. He was accepted as an expert without objection. Osborne's unrebutted testimony as to the authenticity of the Agreement and signatures was accepted by the trial court. The court also found persuasive the testimony of witnesses who testified the Agreement was motivated by petitioner's belief he would be successful in his litigation, then pending, against his family's estate, and sought to exclude those future proceeds from decedent.

The Agreement explicitly provided:

> each party has full knowledge of the extent and approximate present value of all the property and estate of the other, and of all the rights and privileges in and to such property and estate which would be conferred by law upon each in the property and estate of the other by virtue of the consum[m]ation of the contemplated marriage if this agreement were not otherwise entered into.

This language fulfills the requirements of N.J.S.A. 37:2-38(c) by showing both petitioner and decedent had adequate knowledge of the finances of the other. Petitioner certainly had knowledge decedent owned her home. Petitioner posits the waiver contained in the Agreement should not have been enforced,

11

because it does not comply with the Uniform Premarital and Pre-Civil Union Agreement Act, N.J.S.A. 37:2-31 to -41, as it contains no express waiver of the rights to an elective share of the estate.

N.J.S.A. 3B:8-1(a) provides that "[i]f a married person . . . dies domiciled in this State, the surviving spouse . . . has a right of election to take an elective share of one-third of the augmented estate," unless the decedent or surviving spouse had filed a complaint for divorce. This statute "has nothing to do with carrying out the decedent's actual intent. In fact, the statute may be utilized to circumvent the actual intent to disinherit a surviving spouse." In re Est. of Peck, 429 N.J. Super. 409, 415 (Ch. Div. 2012).

However,

> [t]he right of election of a surviving spouse . . . and the rights of the surviving spouse . . . may be waived, wholly or partially, before or after marriage before, on or after May 28, 1980, by a written contract, agreement or waiver, signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of "all rights" (or equivalent language) in the property or estate of a present or prospective spouse . . . is a waiver of all rights to an elective share by each spouse . . . in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other . . . by virtue of the provisions of any will executed before the waiver or property settlement.
>
> [N.J.S.A. 3B:8-10.]

As discussed above, we affirm the trial court's finding that the parties' Agreement is valid. The Agreement explicitly waives "any and all right[s]" one party has "as a result of the marital relationship including, but not limited to, equitable distribution of property . . . or other similar statutory scheme for the division of marital property."

This language waiving "any and all right[s]" to the property of the other spouse satisfies the requirements of N.J.S.A. 3B:8-10. The Agreement was executed by both parties and duly witnessed. The conduct of the parties throughout the marriage ratified the terms of the Agreement, since each spouse kept their property separate, including decedent's house and petitioner's apartments. We conclude petitioner affirmatively waived his right to an elective share of decedent's estate.

C.      The Life Estate to Petitioner

We part company with the trial court in its decision to use its equitable discretion to grant petitioner a life estate in the property, albeit one restricting him from alienating the property, because that exercise of discretion is contrary to decedent's intentions and foreclosed by petitioner's waiver of the elective share in the Agreement.

Petitioner argues the court's grant of a life estate should be set aside in favor of a more just allocation. The court found petitioner had shown marital contributions, through the form of physical labor and use of his veteran status to obtain a better interest rate on decedent's behalf when she refinanced.

He further argues decedent had unclean hands and breached her fiduciary and spousal obligations to petitioner by failing to create a joint account into which both parties' salaries would be deposited and used and concealing her intent to disinherit petitioner. Petitioner posits such breach of decedent's duties warrants a fairer distribution of the estate's assets in his favor.

The court found petitioner was entitled to a life estate on the home "based in equity", with the remainder to respondent. Petitioner was ordered to keep the home in good repair and pay taxes. He is, however, not permitted to allow the waste or decay of the home, and he is not granted the power to sell or alienate his interest in the property or encumber the property in any way. The court relied upon Carr v. Carr, 120 N.J. 336, 351-52 (1990), which is distinguishable because the wife there could not inherit an elective share as she had filed for divorce before decedent's death, and could not receive an equitable distribution of the marital property; there is no such "compelling unfairness and inequity" here.

Although courts have "the power to adapt equitable remedies to the particular circumstances of each particular case," see Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 529 (2008) (quoting Mitchell v. Oksienik, 380 N.J. Super. 119, 131 (App. Div. 2005)), equity must follow the law, see Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985); In re Est. of Shinn, 394 N.J. Super. 55, 67 (App. Div. 2007). Here, having found the Agreement, signed by petitioner, valid, including the waiver of the elective share contained therein, and the Will disinheriting petitioner valid and consistent with the Agreement, and not the product of undue influence, the court was constrained to give effect to the testator's intent. These equitable considerations cannot be employed to undo clear intent on the part of the testator. "[A] court's duty in probate matters is 'to ascertain and give effect to the probable intention of the testator.'" In re Prob. of Will & Codicil of Macool, 416 N.J. Super. 298, 307 (App. Div. 2010) (quoting Fid. Union Tr. Co. v. Robert, 36 N.J. 561, 564 (1962)). Accordingly, the court must "look to the language of the will to determine if the testator expressed an intent as to how the property should be distributed." In re Est. of Hope, 390 N.J. Super. 533, 539 (App. Div. 2007).

A life estate in the home was not warranted here. Petitioner did not show by clear and convincing evidence he was entitled to any relief, and he has in fact

15

lived rent-free in the home since moving back in, contributing nothing toward household expenses. A life estate runs counter to the intent of the Agreement, which the court had already found enforceable, and which provided each party would keep their property separate. Because the trial court's use of discretion contradicted decedent's intent and was foreclosed by petitioner's waiver of the elective share in the parties' Agreement, we vacate this part of the trial court's order and remand for an order consistent with this opinion.

To the extent we have not addressed any of petitioner's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1838-22